WESTERN UNION TELEGRAPH COMPANY v. M. E. FORD.

Decided November 4, 1905.

**1.—Death Message—Delay in Delivery—Notice to Company.**

Upon receipt of a death message the telegraph company is put upon notice that the addressee would most likely attend the funeral and would employ all reasonable or necessary means of doing so. Facts considered and held to have been reasonably in the contemplation of the parties.

**2.—Briefing Case—Proposition and Statement.**

The Appellate Court will consider only such propositions as are followed by a statement germane thereto.

Appeal from the District Court of Clay. Tried below before Hon. A. H. Carrigan.

*George H. Fearons, N. L. Lindsley, W. T. Allen* and *Huff, Barwise & Huff,* for appellant, in support of the first, second and third assignments, cited: Western Union Tel. Co. v. Linn, 87 Texas, 7; Western Union Tel. Co. v. Motley, 87 Texas, 38; Western Union Tel. Co. v. Gaddis, 8 Texas Ct. Rep., 604; Western Union Tel. Co. v. Ragland, 61 S. W. Rep., 421; Western Union Tel. Co. v. Luck, 91 Texas, 178.

*R. E. Taylor* and *S. A. Denny,* for appellee, cited: Western Union Tel. Co. v. Norris, 1 Texas Ct. Rep., 685; Western Union Tel. Co. v. Bryson, 61 S. W. Rep., 548; Southwestern Tel. & Tel. Co. v. Taylor, 63 S. W. Rep., 1076.

SPEER, ASSOCIATE JUSTICE.—This suit was instituted by the appellee against the appellant to recover damages for the negligent delay in delivering to her the following message: "Henrietta, Texas, January 30, 1904. Mrs. M. E. Ford, Elk City, O. T. Oliver Ford is dead. Come at once. (Signed) Anna Bell." Appellee is the mother of the deceased, and alleged in her petition that the message in question should have been delivered to her by 6:20 p. m. on January 30, and that if the same had been so delivered to her she could and would have sent a message to another son, G. M. Ford, at Chickasha, to meet her at that place and accompany her to Hurnville, the place of interment, and that her son, G. M. Ford, would have met her at Chickasha, from which place they could and would have gone to Ryan, I. T., which place they would have reached about 4:30 a. m., February 1, 1904, where they would have gotten a buggy and driven across the country to Hurnville prior to the burial of her son Oliver. There was a trial before a jury, resulting in a verdict and judgment for the appellee in the sum of $200, from which judgment this appeal is perfected.

Appellant has in writing withdrawn all assignments save the first, second, third and eighth, and these only are relied upon in this court. The first, second and third assignments present the question of the remoteness of the contingency of Mrs. Ford's notifying her son, G. M. Ford, and his accompanying her from Chickasha to Ryan and thence

by private conveyance to Hurnville, the place of burial. In other words, it insists that it was not within the contemplation of the parties to the contract that Mrs. Ford had a son at Chickasha, and that in the event of a prompt delivery of the message to her she would notify this son to meet her at Chickasha, and that he would in consequence accompany her as far as Ryan and there leave the railroad and proceed by private conveyance to Hurnville. While this case may be distinguishable on the facts from that of Western Union Telegraph Co. v. Norris, 1 Texas Ct. Rep., 685; Western Union Telegraph Co. v. Swearingen, 9 Texas Ct. Rep., 164, 78 S. W. Rep., 491, yet we think it is not distinguishable in principle and should be ruled by them. Upon the receipt of the message, the company was put upon notice that the addressee would most likely desire to attend the funeral, and that she would employ all reasonable or necessary means of doing so. We view the matter of her notifying her son, G. M. Ford, to meet her, and his conveying her by private conveyance from Ryan to Hurnville, as a means merely of learning the only practicable route by which she could reach Hurnville in time to be present at the burial of her son. It is true the evidence, including her original petition and testimony on a former trial, indicates that she did not know of this particular route, and that without the assistance of her son, G. M. Ford, she would not have made the journey this way, but would have gone another route with which she was familiar and by which she would not have reached Hurnville in time to have attended the funeral. But for the reason we have already indicated, this can make no difference. The company knew she would exhaust every reasonable means of reaching Hurnville, and this is the one she says she would have adopted.

The eighth assignment assails the verdict and judgment as being without evidence to support it and against the great weight and preponderance of the testimony upon three grounds, to wit: First, "the proof on the trial showed that even if the message in controversy had been delivered promptly on its receipt at Elk City, that plaintiff would have taken passage to Henrietta, Texas, by the Choctaw, Oklahoma and Gulf Railroad to El Reno, and thence over the Rock Island to Ringgold, and thence over the Missouri, K. & T. to Henrietta, and would not in thus traveling have arrived at Henrietta or Hurnville until after the burial of her son." Second, "the proof further showed that if the message had been promptly delivered at once on its receipt at Elk City, that the plaintiff could not and would not have arrived at Hurnville, the place of the burial of her son, by traveling via the route above named to Ryan, I. T., and thence driving across the country, for that to have done so the message in controversy must have been delivered to her in such a length of time prior to seven o'clock p. m. on January 30, 1904, as that she could have prepared and filed with the defendant at Elk City a message to her son, Gus Ford, at Chickasha, which could not under the testimony have been done." Third, and "further the testimony shows that the plaintiff was practically a stranger and almost entirely unknown at Elk City, and that the message could not have been delivered with any sort of reasonable effort or diligence so as to have permitted her, by the method she would have resorted to, to have arrived at Hurnville prior to the burial of her son." The as-

476 · TEXAS CIVIL APPEALS REPORTS, VOL. 40.    [*November,*]

signment, which is submitted as a proposition, is followed by a state-
ment, which itself is placed under the head of a proposition germane
to the first ground stated but not to the others, and we therefore
consider only the first ground of attack.   The evidence shows that at
the time the message in controversy was delivered to appellant, a simi-
lar message addressed to G. M. Ford was also delivered to it and trans-
mitted and delivered to him at Chickasha; that upon the actual de-
livery of the message addressed to appellee, which was some twenty-four
hours after its receipt on January 30, she sent a message to her son,
G. M. Ford, at Chickasha, requesting him to meet and accompany her
on the journey to Hurnville; but that this message was not delivered
to G. M. Ford because in obedience to the message previously delivered
to him from Henrietta, he had departed at an early hour for the place
of burial.   The appellee testified in effect that if the message had been
promptly delivered to her, she would have promptly wired her son,
G. M. Ford, to meet her at Chickasha, and would have gone with him
to Ryan and from there by private conveyance to Hurnville.   G. M. Ford
testified that if he had received such a message from his mother, he
would have accompanied her to Hurnville by way of Ryan.   It is also
shown that when he did go to Hurnville he went by this route.   It is
true that the testimony is contradicted in that appellee in her abandoned
pleadings had alleged, and upon a former trial had testified, that she
would have gone by rail via Ringgold and Henrietta, which the evidence
shows she could not have done in time to have been present at the
funeral.   It was only at the term of court at which the present judgment
was rendered that she pleaded the case as made on this appeal, or testi-
fied that she would have notified her son, G. M. Ford, and would have
gone by private conveyance from Ryan to Hurnville.   But this conflict
in the testimony, for it is no more than a conflict, was submitted to
the jury and determined by them, and we are unable to disturb their
decision.   The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.