## SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY *v.* REYNOLDS.

Under the ruling made in the case of *Seifert* v. *Western Union Telegraph Co.,* 129 *Ga.* 181, the petition in this case does not set forth a cause of action, and the court erred in not sustaining the general demurrer.
FEBRUARY 11, 1913.

Action for damages. Before Judge Bell. Fulton superior court. September 5, 1911.

*McDaniel & Black,* for plaintiff in error.

*Stiles Hopkins,* contra.

HILL, J. Mrs. V. H. Reynolds brought suit against the Southern Bell Telephone and Telegraph Company to recover damages for injuries alleged to have been sustained by her on account of the negligence of the defendant. The defendant filed its general demurrer, which was overruled by the court, and it excepted. The petitioner alleges that her husband was a subscriber to the telephone service of the defendant for a valuable consideration, and as such was entitled to prompt and efficient service at the hands of the defendant by night and by day, by answering all telephone signals made at petitioner's home in the regular and customary way. Plaintiff lived with her husband in DeKalb county, Georgia, at a distance of from five to six miles from Atlanta, where her family physician lived, who was also a subscriber in good standing, for a money consideration, for the telephone service of defendant. He lived approximately five miles from the plaintiff, and his telephone was a part of the same general telephone system operated by the defendant. Plaintiff expected to be delivered of a child on or about December 8, 1910, and her family physician was apprised of the fact and agreed to remain at home all night of the above-named date, subject to the call of plaintiff's husband. At 2:30 o'clock on the morning of December 9, 1910, her husband went to the telephone in his residence and signaled the defendant company in the usual way, and was promptly given the telephone connection with the family physician and had a conversation with him in reference to plaintiff's condition. At that time plaintiff was resting quietly and no symptoms of the delivery had appeared, and the physician instructed her husband to call him every twenty minutes during the remainder of the night to explain her condition, and the physician stated to her husband in this conversation that he was ready to come to plaintiff's home as soon he was advised that the delivery of the child was imminent, or as soon as any symptoms of such should appear. The physician owned an automobile, and the roads between his home and that of plaintiff were good, and it would take twenty or thirty minutes for the physician to thus travel the distance. Shortly after 2:30 o'clock on the

morning of December 9, 1910, symptoms of the imminent and approaching delivery commenced suddenly to manifest themselves, and her husband went immediately to his own telephone and gave the usual signal to the defendant company for the purpose of obtaining a response from the operator of the defendant company and of calling the residence number of the physician, but the defendant company, through its servants, operators, and employees, refused to respond to the signal in any manner whatsoever. Her husband made repeated efforts from 2:45 o'clock on the morning of December 9, 1910, to get a response from the defendant company to his signals at the telephone. He persisted in the usual way, all to no avail, and defendant continuously failed and refused to respond to the signal given by her husband. Plaintiff's child was born between the time from 2:45 o'clock to 4:50 o'clock, without professional assistance or the aid of medical skill. Being thus without the aid of medical skill and assistance, the plaintiff was bruised, contused, lacerated, and suffered hemorrhages, and her health has been greatly and permanently impaired. All this injury could have been prevented had she had the assistance of a skilled physician, such as hers was. She endured great physical pain and suffering besides mental anguish, and her health is greatly and permanently impaired. All this was alleged to be due directly to the defendant's negligent and wanton failure to respond to the signal of her husband for telephone connection with the physician on the morning of the birth of her child.

1. This case is controlled by the ruling of this court in the case of *Seifert* v. *Western Union Telegraph Co.,* 129 *Ga.* 181 (58 S. E. 699, 11 L. R. A. (N. S.) 1149, 121 Am. St. R. 210). In that case Mrs. Seifert sued the telegraph company and alleged that her husband had delivered to the defendant company the following message: "To Dr. R. C. Mosely, Bolingbroke, Ga. Come at once. Mrs. Seifert worse. E. C. Seifert." The message was delivered and the charges paid to the agent of the telegraph company at 12:50 p. m. on July 18th, and was not delivered to the physician until 8:35 a. m. on the 19th. The delay was alleged to be due to the negligence of the defendant. The message could have been transmitted in 15 minutes and delivered in 5 minutes thereafter. At the time of the delivery of the message to the agent of the company, he was informed that the plaintiff was sick and suffering

intensely, and that the message was to the plaintiff's physician, and the immediate sending of it urged, which the agent agreed to do. On July 18th the plaintiff became suddenly worse and suffered most intense pain from an illness which began on July 5th. The physician to whom the telegram was sent was her family physician, and those who were with the plaintiff could not offer the slightest relief. The physician would have responded at once if he had received the telegram, and could have reached the plaintiff in thirty minutes after receiving the message, and could have relieved the plaintiff in ten minutes, and did relieve her, immediately after his arrival, of the most acute suffering on the 19th. No other physician was accessible. It was alleged that the failure of the telegraph company to promptly transmit and deliver the message to the physician "caused the plaintiff nineteen hours of most intense suffering, which affected her general health, retarded her recovery, and caused her to fall into an illness from which she suffered and still suffers," etc. General and special demurrers were filed by the defendant, which were sustained by the trial court, and, on exceptions being taken thereto, this court, through Mr. Justice Cobb, affirmed the judgment in the following language: "A petition in a suit against a telegraph company alleged, that a telegram to a physician had been delivered to the defendant for transmission, which showed upon its face that he was called for the purpose of relieving the plaintiff from suffering that she was then enduring; that the telegraph company negligently failed to transmit and deliver the telegram within a reasonable time; that on account of such failure the suffering of the plaintiff continued for many hours, which could and would have been relieved if the telegram had been promptly delivered and the physician had responded thereto, which, it is alleged, he would have done; and that after the lapse of many hours the physician came and promptly relieved the suffering of plaintiff. The only damages alleged were the mental and physical suffering which the plaintiff endured during the time that the physician would have come, if the telegram had been promptly delivered, and the time that he actually arrived. *Held*, that the petition set forth no cause of action for the damages alleged, and was properly dismissed on demurrer."

It is insisted by the defendant in error that the cases of *Western Union Tel. Co.* v. *Ford*, 8 *Ga. App.* 514 (70 S. E. 65), and *Glawson*

v. *Southern Bell Tel. &c. Co.*, 9 *Ga. App.* 450 (71 S. E. 747), are in point, and are distinguishable from the *Seifert* case, supra, as is this case.   It is sufficient to say that these cases decided by. the Court of Appeals were not certified to this court, so that it might pass upon the question of whether or not the *Seifert* case was controlling, but that court thought there was ground of differentiation from the *Seifert* case.   In point of fact, the differentiation was as to the *extent* of the injury inflicted; and whether the injury resulted in the loss of an eye, or other permanent injury, or death, did not affect the question of the right to recover, but only the extent of the recovery.   Whether the injury was temporary or permanent affected the measure of damages, and not the right to recover.   We are unable to agree with our learned brethren that this furnishes any legitimate differentiation from the *Seifert* case.   The principle involved is the same in both cases.   The *Seifert* case was decided by a full bench, and we are bound by it.   It follows that the court below erred in overruling the demurrer to the petition in this case.
*Judgment reversed.   Beck, J., absent.   The other Justices concur.*